**THE ROSEN LAW FIRM, P.A.**
Christopher S. Hinton, #4113213
Laurence M. Rosen
Phillip Kim
275 Madison Avenue, 34th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: chinton@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| VINCE VALENTINO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br>v.<br>KPMG, LLP, JOHN J. AESOPH, AND DARREN M. BENNETT;<br><br>Defendants. | Civil Action No..<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vince Valentino (collectively the "Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint (the "Complaint") the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by counsel, *inter alia*: (a) review and analysis of relevant filings made by TierOne Corporation ("TierOne" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of TierOne's public documents, conference calls

and press releases; (c) review and analysis of securities analysts' reports and advisories concerning the Company; (d) information readily obtainable on the Internet; and (e) review and analysis of public documents concerning the defendant KPMG LLP ("KPMG")—TierOne's independent auditor.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to defendants or are exclusively within their control.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all persons and entities other than Defendants who purchased the common stock of TierOne between March 13, 2009 and May 14, 2010, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws (the "Class").

2. TierOne is a bank holding company. TierOne conducted its principal business through its wholly owned banking subsidiary, TierOne Bank (the "Bank"). Founded in 1907, the Bank became one of the largest banks in Nebraska. While it survived the Great Depression and numerous recessions, the Bank could not overcome the Company's systemic lack of internal controls and false financial reporting which caused the Bank's failure—the largest Bank failure ever in Nebraska.

3. At the start of the Class Period, TierOne's auditor, KPMG, issued a materially false and misleading "clean" audit opinion for TierOne's fiscal year ended December 31, 2008 results.

4. The audit opinion falsely stated that KPMG had conducted their audit of TierOne's year end 2008 results "in accordance with the standards of the Public Company Accounting Oversight Board (United States)." As to TierOne's internal controls, KPMG falsely stated that it

audited "in accordance with the standards of the Public Company Accounting Oversight Board (United States), TierOne Corporation's internal controls over financial reporting as of December 31, 2008…. and our report dated March 12, 2009 expressed an unqualified opinion on the effectiveness of the Company's internal control over financial reporting."

5. In reality, however, Defendants willfully turned a blind eye and/or deliberately disregarded numerous fundamental audit tests and procedures Defendants identified as having to be completed, but did not do. Defendants also ignored numerous red flags.

6. Rather than come clean to investors about its misconduct, defendants attempted to point the finger at TierOne and its management in an attempt to cover-up KPMG's fraudulent clean audit opinions of TierOne.

7. On April 26, 2010, TierOne announced that KPMG had resigned as TierOne's auditor and that KPMG had withdrawn its audit opinion on TierOne's financial statements for the fiscal year ended December 31, 2008 and clean opinion on TierOne's internal controls because TierOne's financial statements contained "material misstatements" and TierOne had material internal control weaknesses, respectively.

8. On April 29, 2010, TierOne filed an 8-K with the SEC. According to the 8-K, KPMG found material misstatements concerning loan loss reserves, *i.e.* the ALL and the Provision, and that they were caused by a material internal control deficiency. KPMG also accused the Company of concealing a document created during the second quarter of 2009 that called for additional loan loss reserves. According to the 8-K, KPMG determined they could no longer rely on management's representations. TierOne denied KPMG's assertions.

9. In a letter dated May 12, 2010, filed with the SEC on May 14, 2010, KPMG refuted a number of statements made by the Company in the April 29, 2010 8-K. KPMG claimed that it did

not learn of the document created in the second quarter of 2009 until April 20, 2010—nearly a year after the document was created. Stated another way, management lied to KPMG. The KPMG letter also revealed that contrary to the Company's representation that KPMG was on the verge of completing its review and audit of the Company's financial statements by April 30, 2010, KPMG's actual position was that it was "highly unlikely" this review and audit would be completed by April 30, 2010.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

12. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

13. In connection with the acts, conduct and other wrongs alleged herein, defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14. Plaintiff purchased TierOne common stock during the Class Period as set forth in his certification, filed herewith, and has suffered damages a result.

15. Defendant KPMG is a limited liability partnership headquartered in New York County, New York. During the Class Period, KPMG audited TierOne's financial statements for the fiscal year ended December 31, 2008. KPMG also performed quarterly reviews of TierOne's financial statements during the Class Period.

16. Defendant John J. Aesoph ("Aesoph") at all relevant times herein was an auditor at KPMG. Aesoph has been a partner at KPMG since 2005. Aesoph was on the TierOne audit engagement from 2002 through KPMG's resignation in April 2010. Aesoph is a resident of Omaha, Nebraska. For the Audit of TierOne's 2008 financial statements Aesoph was the KPMG's Engagement Partner.

17. Defendant Darren M. Bennett ("Bennett") at all relevant times herein was an auditor at KPMG since 2001. Bennett worked on the TierOne audit engagement from 2003 through KPMG's resignation in April 2010, with exception of one year. Bennett was the KPMG's Senior Manager for TierOne's 2008 audit.

**Relevant Non Party**

18. Nonparty TierOne was a Wisconsin corporation with its principal executive offices located at 1235 N Street, Lincoln, Nebraska 68508. The Bank was a federally chartered stock savings bank. During the Class Period, TierOne's stock was listed on the NASDAQ under ticker "TONE" until it was delisted on May 7, 2010. Thereafter, the Company's shares traded on the over-the-counter market.

19. On June 24, 2010, TierOne filed a Chapter 7 Bankruptcy petition with the District of Nebraska Bankruptcy Court.

20. Bennett and Aesoph are collectively referred to hereinafter as the "Individual Defendants."

21. Each of the Individual Defendants:

(a) directly participated in the management of KPMG's audit of TierOne;

(b) was directly involved in the day-to-day operations KPMG's audit of TierOne at the highest levels;

(c) was privy to confidential proprietary information concerning the KPMG's audit of TierOne;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading audit opinion alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the KPMG's audit of TierOne;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued by KPMG concerning TierOne; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

22. KPMG is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

23. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to KPMG under *respondeat superior* and agency principles.

**SUBSTANTIVE ALLEGATIONS**

24. The Class Period begins on March 13, 2009 when TierOne filed its Form 10-K with the SEC for the fiscal year ended December 31, 2008. In in the 10-K KPMG's materially false and misleading clean audit opinion of TierOne's 2008 financial statements and TierOne's

internal controls. KPMG's audit opinion is set forth below:

**Report of Independent Registered Public Accounting Firm**
The Board of Directors and Stockholders
TierOne Corporation:

We have audited TierOne Corporation's (the Company) internal control over financial reporting as of December 31, 2008, based on criteria established in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). The Company's management is responsible for maintaining effective internal control over financial reporting and for its assessment of the effectiveness of internal control over financial reporting, included in the accompanying Management's Annual Report on Internal Control Over Financial Reporting. Our responsibility is to express an opinion on the Company's internal control over financial reporting based on our audit.

We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects. Our audit included obtaining an understanding of internal control over financial reporting, assessing the risk that a material weakness exists, and testing and evaluating the design and operating effectiveness of internal control based on the assessed risk. Our audit also included performing such other procedures as we considered necessary in the circumstances. We believe that our audit provides a reasonable basis for our opinion.

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

> In our opinion, TierOne Corporation maintained, in all material respects, effective internal control over financial reporting as of December 31, 2008, based on criteria established in Internal Control - Integrated Framework, issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).
>
> We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the consolidated statements of financial condition of TierOne Corporation as of December 31, 2008 and 2007, and the related consolidated statements of operations, changes in stockholders' equity and comprehensive income (loss), and cash flows for each of the years in the three-year period ended December 31, 2008, and our report dated March 12, 2009 expressed an unqualified opinion on those consolidated financial statements.
>
> /s/ KPMG LLP
> Lincoln, Nebraska
> March 12, 2009

25. The audit opinion was materially false and misleading when made because TierOne's April 26, 2010 announcement stated that KPMG had withdrawn the above audit opinion on TierOne's financial statements and internal controls should no longer be relied upon because TierOne's financial statements were misstated.

26. Given KPMG's public assertions in April and May 2010 noted above asserting that it was being misled and could no longer rely on management's representations, the fraudulent nature (i.e., scienter) of KPMG's audit opinion first became known on or about January 9, 2013, when the SEC issued an Order Instituting Administrative Proceedings Pursuant to Section 4C of the Securities Exchange Act of 1934 and Rule 102(e) of the Commission Rules of Practice against defendants Aesoph and Bennett ("Order")—KPMG's Engagement Partner and Senior Manager on the TierOne 2008 audit, respectively. The Order is available at www.sec.gov.

27. The Order revealed that, contrary to the audit opinion, KPMG failed to conduct

its audit of TierOne's 2008 financial statements and internal controls in accordance with applicable professional rules and procedures. Rather, defendants turned a blind-eye to those requirements, ignored numerous red flags, and issued a materially false and misleading "clean" audit opinion on TierOne's 2008 financial statements and internal controls.

28. When details relating to the falsity of KPMG's audit opinion entered into the market and began to materialize through partial disclosures throughout the Class Period, the price of TierOne's stock dropped, damaging investors.

**RELIANCE PRESUMPTION: FRAUD-ON-THE-MARKET DOCTRINE**

29. At all relevant times, the market for TierOne's common stock was an efficient market for the following reasons, among others:

(a) TierOne's common stock met the requirements for listing and was listed and actively traded on the NASDAQ and over-the-counter, highly efficient and automated markets;

(b) During the class period, on average, hundreds of thousands of shares of TierOne's common stock were traded on a weekly basis;

(c) As a regulated issuer, TierOne filed with the SEC periodic reports and was eligible to file a short-form registration statement on Form S-3 with the SEC during the Class Period;

(d) TierOne regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e) TierOne was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f) Numerous NASD member firms were active market-makers in TierOne stock at all times during the Class Period; and

(g) Unexpected material news about TierOne was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

30. As a result of the foregoing, the market for TierOne's common stock promptly digested current information regarding TierOne from all publicly available sources and reflected such information in TierOne's stock price. Under these circumstances, all purchasers of TierOne's common stock during the Class Period suffered similar injury through their purchase of TierOne's common stock at artificially inflated prices, and a presumption of reliance applies.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

31. Plaintiff bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of TierOne during the Class Period and who were damaged thereby. Excluded from the Class are Defendants and TierOne, the current and former officers and directors of KPMG or TierOne, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants or TierOne have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, TierOne's common stock was actively traded on the NASDAQ and over-the-counter. While the exact number of Class members is unknown to Plaintiff

at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.

33. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether the misstatements and omissions alleged herein were made with scienter; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**FIRST CLAIM**

**Violation of Section 10(b) of**

**The Exchange Act Against and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. This First Claim is asserted against defendants KPMG, Aesoph and Bennett (collectively "First Claim Defendants").

39. During the Class Period, First Claim Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell TierOne securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, First Claim Defendants, individually and as a group, took the actions set forth herein.

40. First Claim Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of TierOne as specified herein.

41. First Claim Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein by issuing a materially false and misleading audit opinion of TierOne.

42. Each of the First Claim Defendants' primary liability, and controlling person liability, arises from the following facts: (1) individual First Claim Defendants were high-level executives, directors, and/or agents of KPMG and/or the team engaged in the audit of TierOne ("Audit Team"); (2) each of the First Claim Defendants, by virtue of his responsibilities and activities as a senior

officer and/or director of KPMG and/or the Audit Team, was privy to and participated in the creation, development and reporting the audit opinion for TierOne; (3) each of the First Claim Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Audit Team or KPMG's management team, internal reports, and other data and information about the audit of TierOne; (4) each of the First Claim Defendants was aware of the dissemination of KPMG's audit opinion to the investing public that they knew or recklessly disregarded was materially false and misleading; and (5) each of the First Claim Defendants culpably participated in the wrongful conduct alleged herein.

43. Each of the First Claim Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such First Claim Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing TierOne's financial condition and future business prospects from the investing public and supporting the artificially inflated or distorted price of its securities. As demonstrated by First Claim Defendants' overstatements and misstatements of the Company's financial condition and business prospects throughout the Class Period, First Claim Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

44. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for TierOne's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of TierOne's publicly-traded common stock was artificially inflated or distorted, and relying directly or

indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the Company's common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired and/or sold TierOne common stock during the Class Period at artificially high prices and were damaged thereby.

45. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding KPMG's audit opinion of TierOne, which were not disclosed by First Claim Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired TierOne common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

46. By virtue of the foregoing, the First Claim Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

47. As a direct and proximate result of the First Claim Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

48. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of common stock giving rise to the cause of action.

**SECOND CLAIM**

**Violation of Section 20(a) of**
**<u>The Exchange Act Against the Individual Defendants</u>**

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. This Second Claim is asserted against each of the Individual Defendants.

51. The Individual Defendants acted as controlling persons of KPMG within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the KPMG's operations and/or involvement in the KPMG's audit of TierOne, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of KPMG or its audit of TierOne, including the content of KPMG's audit opinion.

52. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of KPMG or the audit of TierOne and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53. As set forth above, KPMG violated Section 10(b) and Rule 10b-5. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

54. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as

Class Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: January 14, 2013

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s Christopher Hinton
Christopher S. Hinton, #4113213
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
pkim@rosenlegal.com
chinton@rosenlegal.com
lrosen@rosenlegal.com

Counsel for Plaintiff

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against the auditors of TierOne Corporation ("TONE"). The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint against the auditors of TierOne Corporation and authorize the filing thereof. I also retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2. I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3. I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4. The following is a list of all of the purchases and sales I have made in TONE securities during the Class Period set forth in the complaint. I have made no transactions during the class period in the securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| **SEE ATTACHED** | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM: (212) 202-3827

5. I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):
*Ray v. TIerOne Corporation, et al.*, No. 10-CV-199 (D. Neb.)

6. I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of January, 2013.

Signature: Vincent Valentino
Name: Vincent Valentino
Address: Redacted [redacted]

Phone:
E-mail:

Item. 4 (continue from prior page if needed)

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR MAIL TO:
THE ROSEN LAW FIRM PA
275 Madison Avenue, 34th Floor
NEW YORK, NY 10016

**TD AMERITRADE**

GAINSKEEPER®

**Gain/Loss** Provided by GainsKeeper

View **Unrealized**

Mon Jun 21 2010 4:30:51 PM EST

[redacted]

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **D TIERONE CORP** | **16,000** | **---** | **2.0922** | **33,475.91** | **0.07** | **1,120.00** | **-32,355.91** | **-96.65** | **Multiple** |
| | 2,000 | 01/14/09 | 3.5050 | 7,009.99 | 0.07 | 140.00 | -6,869.99 | -98.00 | Long-term |
| | 2,000 | 01/16/09 | 3.0350 | 6,069.99 | 0.07 | 140.00 | -5,929.99 | -97.69 | Long-term |
| | 2,000 | 01/16/09 | 2.3530 | 4,705.99 | 0.07 | 140.00 | -4,565.99 | -97.03 | Long-term |
| | 2,000 | 10/16/09 | 2.7050 | 5,409.99 | 0.07 | 140.00 | -5,269.99 | -97.41 | Short-term |
| | 1,000 | 10/28/09 | 2.01 | 2,009.99 | 0.07 | 70.00 | -1,939.99 | -96.52 | Short-term |
| | 2,000 | 11/04/09 | 1.7550 | 3,509.99 | 0.07 | 140.00 | -3,369.99 | -96.01 | Short-term |
| | 2,000 | 11/12/09 | 1.0050 | 2,009.99 | 0.07 | 140.00 | -1,869.99 | -93.03 | Short-term |
| | 1,000 | 11/12/09 | 0.96 | 959.99 | 0.07 | 70.00 | -889.99 | -92.71 | Short-term |
| | 2,000 | 11/13/09 | 0.8950 | 1,789.99 | 0.07 | 140.00 | -1,649.99 | -92.18 | Short-term |

[redacted]

**Important Disclaimer: Intraday data is at least 20-minutes delayed. GainsKeeper® service and tax lot and performance reporting is offered and conducted by Wolters Kluwer Financial Services, Inc. ("WKFS") and is made available by TD AMERITRADE for general reference and education purposes only. TD AMERITRADE is not responsible for the reliability or suitability of the information. TD AMERITRADE does not provide tax advice. You may wish to consult independent sources with respect to tax lot and performance reporting.

The GainsKeeper® service and the financial information and research, including but not limited to market data, tools, analysis, services and commentary (collectively, "Information") are subject to, and expressly conditioned on, your acceptance of the GainsKeeper® Terms of Usage, including future revisions. Your use of the Information constitutes your acceptance of the GainsKeeper® Terms of Usage. Access to and use of the GainsKeeper® service and other information is also governed by the TD AMERITRADE Client Agreement. TD AMERITRADE and WKFS are separate unaffiliated companies and are not responsible for one another's services or policies.

GAINSKEEPER is the registered trademark of Wolters Kluwer Financial Services, Inc.

[redacted]